(50 App. Div. 465.)

TRUSTEES OF SUSTENTATION FUND OF EPISCOPAL CHURCH v.
MULLOWNEY et al.

(Supreme Court, Appellate Division, Second Department. April 14, 1900.)

MORTGAGES—FORECLOSURE.

     On foreclosure sale, the purchaser paid 10 per cent. of the purchase price to the referee, and a time was set for the completion of the purchase. The terms of the sale were subsequently modified, and at the request of the purchaser the settlement was postponed several times; and at the last meeting, when the purchaser offered to complete the sale as modified, the attorney acting for plaintiff and the referee demanded $10 for his time and expenses in attending the postponed meetings. *Held*, that a refusal to execute the deed until such demand had been paid was not justified.

Appeal from special term, Kings county.

Action by the trustees of the Sustentation Fund of the Episcopal Church against Richard Mullowney and others to foreclose a mortgage. From an order denying a motion to compel the refunding of 10 per cent. of the purchase money paid upon sale, the purchaser appeals. Order modified and allowed.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, WOODWARD, and HIRSCHBERG, JJ.

John Mulholland, for appellant.

Theodore B. W. Anthony, for respondents.

PER CURIAM.   At the foreclosure sale the appellant purchased the mortgaged premises for $5,134.38, and paid 10 per cent. of the amount of his bid to the referee.   It was subsequently agreed by Mr. Walter C. Anthony, the attorney for the plaintiffs, that $3,600 of the purchase money might remain on bond and mortgage for three years at 5 per cent.   When the parties finally met at the referee's office to close the transaction, neither the plaintiffs' attorney nor the purchaser was ready to do so.   There was a mistake in the referee's deed as to the dimensions of the property, which required correction, and the purchaser had not prepared the necessary bond and mortgage which he was to give to the plaintiffs as part of the purchase price.   At this point the parties differ in regard to what occurred.   It appears to have been the understanding of Mr. Mintz, the purchaser, that Mr. Anthony, the plaintiffs' attorney, was to prepare the bond and mortgage; and he states in his affidavit that Mr. Anthony, when he undertook to correct the mistake which was discovered in the deed, also promised to prepare such bond and mortgage.   Mr. Anthony, on the other hand, declares that Mr. Mintz agreed to have the bond and mortgage prepared by his own attorney while Mr. Anthony was rewriting the corrected deed, and "that the entire business should be closed one hour later."   There had been several postponements of the time for completing the purchase, and Mr. Anthony desired to be paid for his time and expense in coming from the city of Newburgh, where he resides, to the referee's office, in the city of New York.   Mr. Anthony swears that on the occasion of the last adjournment he called the attention of Mr. Mintz to the fact that the repeated postponements were causing him great loss of time and considerable expense, and that thereupon Mr. Mintz volunteered to pay him for his time and expense on the next adjourned day, in reliance upon which promise Mr. Anthony consented to the desired adjournment.   This statement is positively denied by Mr. Mintz, who swears that he never agreed to pay the expenses referred to by Mr. Anthony, under any circumstances whatever.   At the final meeting, according to Mr. Mintz's affidavit, Mr. Anthony stated that the title could not be closed without the payment of his expenses, which appear to have been fixed by him at the sum of $10.   Mr. Anthony nowhere denies that he assumed this position, and it is plain enough from the affidavits on both sides that the transaction fell through on account of his demand to be paid for his expenses, and the purchaser's refusal to comply with that demand.   Objection was subsequently made to the check by which the purchaser proposed to pay the cash over and above the amount of the purchase money to be secured by bond and mortgage, on the ground that such check was not a legal tender, but it is apparent that this objection was not the real bar to closing the title.   All would have been well if the $10 had been paid.   Assuming the entire truth of the statement in Mr. Anthony's affidavit that Mr. Mintz agreed to pay the expenses, such agree-

ment could not properly be enforced by refusing to convey the mortgaged premises to the purchaser, if the purchaser complied with the conditions of his bid as those conditions were subsequently modified in regard to the terms of payment. At most, the promise to pay Mr. Anthony's expenses constituted a simple contract, for the breach of which Mr. Anthony could maintain an action against Mr. Mintz. The failure of the latter to perform it did not justify Mr. Anthony, who was acting for the referee as well as for the plaintiffs, in refusing to close the title; and, even if it did, Mr. Mintz should hardly be compelled to lose upwards of $500 on account of his dereliction in this respect.

Although there appears to have been a resale of the property, Mr. Anthony, in his affidavit, consents that the sale to the appellant shall be carried out according to its terms upon his paying such portion of the expenses of advertising for the resale as the court may deem just. From this offer, it is evident that the resale need not stand in the way of a proper adjustment of the rights of the parties now before the court. We think that the appellant should still be allowed an opportunity to complete his purchase as required by his modified bid; that is to say, by giving his bond and mortgage for $3,600 for three years at 5 per cent., and by paying the balance of the purchase money to the referee in legal tender. The order appealed from should be modified so as to allow him this privilege; and so as to provide that, unless he avails himself thereof within twenty days, his application for the repayment of his deposit or other relief shall be denied.